UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SAMANTHA PAYNE, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 17-CV-0578-CVE-FHM
 )
GREAT PLAINS COCA-COLA BOTTLING )
COMPANY, )
 )
        **Defendant.** )

## OPINION AND ORDER

This is an employment discrimination case arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII). Now before the Court is defendant Great Plains Coca-Cola Bottling Company's motion to dismiss (Dkt. # 11).

### I. Background

In her complaint, plaintiff Samantha Payne alleges the following facts: on August 14, 2012, defendant, a beverage bottling company, hired plaintiff, a female. Dkt. # 2-1, at 2-3.[1] On January 31, 2015, plaintiff began working as an inventory control supervisor at defendant's plant in Okmulgee, Oklahoma; she held this position until defendant terminated her on January 19, 2017. Dkt. # 2-1, at 3, 9. As an inventory control supervisor, plaintiff reported directly to Brian Caldwell, the inventory control manager at the Okmulgee plant. Id. at 3. Caldwell, in turn, reported directly to Rick Randleman, who was the Okmulgee plant manager until defendant transferred him to another plant in August 2016. Id. In her position, plaintiff had the authority to discipline employees, and if there were a need to do so she would consult with Caldwell and Nancy Cummings, a human

---

[1] In her Equal Employment Opportunity Commission (EEOC) intake questionnaire, which is attached to her response (Dkt. # 13) to defendant's motion to dismiss (but neither attached to, nor referenced in, her complaint), plaintiff specifies that she is white. Id. at 1.

resources (HR) manager for defendant. Id. During plaintiff's five years of employment with defendant, she received performance appraisals only in 2015 and 2016, and they were both positive. Id. At all times relevant to this lawsuit, plaintiff was (and still is) married to Lyle Payne, a driver who worked for defendant when the events that form the basis of plaintiff's complaint took place. Id.

In the beginning of January 2013, Bobby Sadler (a person plaintiff identifies only by name, but who the Court presumes was plaintiff's colleague) harassed Payne and several other women. Id. Plaintiff reported this to HR, and defendant gave Sadler a "verbal counseling." Id. After this counseling, Sadler "became obsessed with wanting to know" who reported him to HR, and while the harassment stopped for "about two weeks," it then "began again and continued." Id. at 3-4. In "March or April of 2013," plaintiff again reported Sadler to HR, but "instead of disciplining him, [defendant] promoted [him] to warehouse supervisor and he became [plaintiff's] boss." Id. at 4. As plaintiff explains further, "Sadler and Caldwell were best friends and now Sadler was reporting to his best friend and [m]anager of the [w]arehouse at the time, Caldwell." Id.

In the summer of 2013, plaintiff was required to work two hours extra every day. Id. One day, Caldwell claimed falsely that she left early without telling him. Id. As a consequence, Sadler gave plaintiff a corrective action, which she "took . . . to Randleman," who "removed it." Id.

In "June or July of 2014" Caldwell tried to have plaintiff and a coworker fired for time clock fraud, and both plaintiff and her coworker received a "final warning." Id. A "few months later, however," another employee "left the [Okmulgee plant] to go to the store while still on the clock, [and] Caldwell only gave him a verbal discussion." Id.

On January 31, 2015, defendant promoted plaintiff to inventory control supervisor. Id. "Caldwell was always upset about the reports of sexual harassment against Sadler and he always

2

suspected it was [plaintiff] who had made these reports . . . ." Id. Accordingly, "[f]rom the very beginning" of plaintiff's tenure as inventory control supervisor, Caldwell would "load her up with work" and repeatedly complained to HR about her. Id. In April 2015, Sadler was "fired for sexually harassing more women." Id. at 5.

In November 2015, "Caldwell disciplined [plaintiff] for failing to discipline an employee who did not report to [plaintiff] for being on his cell phone. While [plaintiff] did not directly discipline this employee, she did report his violation of policy to his direct supervisor." Id.

In addition, Caldwell (at a time that plaintiff does not specify) "reported his suspicions that something untoward was going on between plaintiff and Randleman." Id. While Randleman was the Okmulgee plant manager, he "repeatedly stalked" and "attempted to have a romantic relationship" with plaintiff. Id. Specifically, "he insisted [plaintiff] join him for lunch almost daily," "sent her more than 5,000 text messages (including at times when she was not at work)," and drove "past her home for no reason." Id. On one occasion, Randleman's wife went to defendant's HR office, "causing . . . a scene" and "demanding [plaintiff] be terminated." Id. at 6. Mrs. Randleman did this because she found the text messages between plaintiff and her husband and was suspicious of their relationship. Id. As a result of this incident, in August 2016 defendant transferred Randleman to another plant, and Heather Johnson replaced him as manager of the Okmulgee plant. Id. Immediately after Randleman was transferred, Caldwell "began his efforts to terminate [plaintiff]" because he felt Randleman could no longer protect her. Id.

In December 2016, plaintiff reported Caldwell to Johnson because plaintiff "discovered that Caldwell and Phil Bosnick [the other inventory control supervisor] were taking time off from work without utilizing their paid time off, thus stealing from the company." Id.

3

On December 9, 2016, Jennifer Mitchell, the Okmulgee plant's night supervisor, told plaintiff that "she was worried about [plaintiff] because [plaintiff] was married to a driver and the drivers were bringing in the Union." Id. at 7. Plaintiff did not know about the drivers' effort to unionize, but after her conversation with Mitchell, plaintiff "learned that her husband was in support of the Union." Id. Plaintiff was never "in support of the Union, but she did think the drivers needed to go outside of [defendant] to get change because management wasn't listening to the drivers." Id. On December 30, 2016, defendant's drivers "voted for the Union." Id. On December 31, 2016, Randy Bullard, a transport bulk driver, told plaintiff he thought her job was in jeopardy because "the Union election was successful." Id.

After the union election, plaintiff's relationship with Caldwell was "more chilly than usual," and he "stopped replying to her texts and emails." Id. On January 4, 2017, Caldwell texted plaintiff and asked her to meet in Johnson's office. Id. There, Caldwell and Johnson told plaintiff that on December 31, 2016, while conducting an end of year inventory audit, plaintiff said, in front of hourly employees, that two other employees who had been recently transferred had "gotten what they deserve." Id. Plaintiff denied making that statement, but Johnson and Caldwell insisted that she would be "getting a corrective action in her file" for making it. Id. at 7-8.

On January 19, 2017, Johnson and Cummings met plaintiff in her office and stated that "they had learned she was discussing her corrective action with hourly employees." Id. at 8. Plaintiff denied doing so, but admitted to telling her husband about the corrective action. Id. In response, Johnson and Cummings stated, "this has nothing to do with [your husband]" and that "they didn't believe her;" Johnson and Cummings then fired plaintiff. Id. Plaintiff received no termination paperwork. Id. Plaintiff "believes Caldwell wanted her terminated because she reported Sadler's harassment to [HR] and because of Randleman's infatuation with [plaintiff]. Coupled with the

4

successful election of the Union . . . it was time to get rid of [Plaintiff]." Id. at 9. Upon plaintiff's termination, "Caldwell and Johnson asked an hourly associate, Kelly Hardenger, to make a list of anything in the past that [plaintiff] may have done that was against policy." Id. In addition, "several other former coworkers of [plaintiff] have stated that [Caldwell] was questioning them about [plaintiff] after her termination." Id.

After defendant terminated plaintiff, plaintiff contacted "as many employees as she could who had been in the break room the night of the audit," and "none of them were interviewed by Johnson, Caldwell, or Cummings." Id. at 8. In addition, plaintiff contacted Millie Bennet "in the Coca-Cola corporate office and asked her to investigate her corrective action and termination." Id. After Bennet investigated, she told plaintiff that plaintiff was "in the wrong," but Bennet admitted that the only people she spoke with were Johnson and Cummings. Id. "Several male managers and supervisors at [defendant] have discussed their own discipline and the discipline of others with hourly employees and have not been terminated." Id. In addition, defendant has a "progressive discipline policy which was not followed in [plaintiff's] case." Id.

Also after defendant's termination of plaintiff (at a time plaintiff does not specify), Randleman's wife contacted her and "threatened to tell [plaintiff's] husband about the text messages" between plaintiff and Randleman. Id. "Apparently, someone had made a complaint to Bennet after [plaintiff's] termination . . . about plaintiff's relationship with Randleman, which prompted an investigation . . . ." Id. And Mrs. Randleman was afraid defendant would fire her husband if defendant learned that he had harassed plaintiff. Id at 8-9. Plaintiff told Mrs. Randleman to "go ahead" and tell her husband, however, because plaintiff's husband already knew of Randleman's "infatuation" with her. Id. at 8. Mrs. Randleman then told plaintiff that if plaintiff denied any relationship with Randleman, he would help plaintiff get her job back. Id. at 9. Plaintiff

5

agreed to this, and "[w]hen Bennet called [plaintiff] to ask if Randleman had kissed her, [plaintiff] denied this had occurred, even though it had, but only once and against [plaintiff's] protests." Id. Plaintiff denied Randleman's conduct "because of the communications she had with Mrs. Randleman and her promise to have Randleman help her get her job back if she denied any inappropriate behavior on [Randleman's] part." Id.

On June 2, 2017, plaintiff submitted an intake questionnaire to the EEOC stating, inter alia, that the bases for her claim of employment discrimination were sex and retaliation. Dkt. # 13-1, at 2. Attached to her intake questionnaire was a narrative statement describing the discriminatory conduct. Id. at 5-7. On July 24, 2017, plaintiff filed a charge of discrimination against defendant with the EEOC, alleging sex discrimination and retaliation. Dkt. # 11-1. Attached to the charge was the same narrative statement that was attached to her intake questionnaire. Id. at 3-5. On September 26, 2017, plaintiff filed this lawsuit in the district court for Tulsa County, State of Oklahoma. Dkt. # 2-1, at 2. On October 17, 2017 defendant removed this case to this Court. Dkt. # 203, at 2.

Plaintiff's complaint alleges four counts under Title VII: sexual discrimination on the basis of Randleman's conduct (count one), hostile work environment on the basis of Randleman's conduct (count two), retaliation on the basis of Caldwell's conduct (count three), and sexual discrimination on the basis of her termination (count four). Dkt. # 13, at 10-12. On November 7, 2017, defendant filed a motion to dismiss (Dkt. # 11). In the event that the Court grants defendant's motion to dismiss, plaintiff requests leave from the Court to amend her complaint. Dkt. # 13, at 11.

**II. Standard of Review**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

### III. Defendant's Motion to Dismiss

Defendant argues that (1) plaintiff's claims for which the supporting factual allegations occurred prior to September 27, 2016 (i.e. counts one, two, and three) are time-barred due to her failure to timely exhaust administrative remedies,[2] (2) plaintiff fails to plead a prima facie case for

---

[2] Defendant raises the issue of whether, in light of Gad v. Kan. State. Univ., 787 F.3d 1032 (10th Cir. 2015), "exhaustion of administrative remedies is a jurisdictional issue or a condition precedent to suit." Dkt. # 11, at 9. Defendant does not explain why it raises this issue (the Court presumes the reason is to prompt the Court to resolve this case under Rule 12(b)(1)). Gad held that "Title VII's requirement that a claimant verify the charges against an employer . . . is non-jurisdictional." Id. 1035-41. Gad, however, has no bearing on the established law that the question of whether a plaintiff has timely exhausted its administrative remedies—which is the question before the Court—"is treated as a statute of limitations issue and reviewed under Rule 12(b)(6)." Barham v. K Mart Corp., 2010 WL 3650684, at *2 (N.D. Okla. Sept. 14, 2010) (citing Jones v. United Parcel Services, Inc., 502 F.3d 1176, 1183 (10th Cir. 2007)).

7

retaliation (count three), and (3) plaintiff fails to plead a prima facie case for sex discrimination in the termination of her employment (count four). Dkt. # 11, at 8-22.

Plaintiff responds that (1) she timely exhausted her administrative remedies and, therefore, none of her claims is time-barred, (2) she has plead a prima facie case for retaliation, and (3) she has plead a prima facie case for sex discrimination in the termination of her employment. Dkt. # 13, at 3-11.

**i. Sexual Discrimination (Count One) and Hostile Work Environment (Count Two)**

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted). To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b). For a charge to be timely in a deferral state like Oklahoma,[3] the charge must be filed within 300 days of the last discriminatory act. See id. Even where a charge is timely filed, acts outside of the 300 day period may not be used as evidence to prove a claim of discrimination but may be used only as background information. Nat'l R.R. Passenger Corp., 536 U.S. at 113. If the plaintiff alleges that acts outside of the statutory time period contributed to a hostile work environment, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Tademy v. Union Pacific Corp., 520 F.3d 1149, 1156 (10th Cir. 2008). "'The obligation to demonstrate timeliness [is] . . . a burden for plaintiffs to carry by

---

[3] Whether a state is deferral or non-deferral depends on the existence of state or local fair employment practice agencies. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Shempert v. Harwick Chem. Corp., 151 F.3d 793, 796 n.3 (8th Cir. 1998).

8

properly pleading it.'" Gad, 787 F.3d at 1041 (quoting Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1167 (10th Cir. 2007)).

Defendant argues that because plaintiff filed her EEOC charge of discrimination on July 24, 2017, "all allegations prior to September 27, 2016 [i.e. 300 days prior to July 24, 2017] are time-barred." Dkt. # 11, at 10. As such, defendant concludes, the Court must dismiss plaintiff's claims for sexual discrimination (count one) and hostile work environment (count two) because they are based on Randleman's conduct, and he was transferred from the Okmulgee plant in August 2017, making it impossible for him to have discriminated against plaintiff on or after September 27, 2016. Id.[4]

Plaintiff responds that she submitted a general intake questionnaire to the EEOC on June 2, 2017, and this should be the date used to determine whether plaintiff's employment discrimination claims are timely. Dkt. # 13, at 5. Using this date, plaintiff argues further, any alleged acts of discrimination must have occurred on or after August 6, 2016 (as opposed to September 27, 2016). Id. at 6. And therefore, plaintiff concludes, her claims for sexual discrimination (count one) and hostile work environment (count two) are not time-barred because they are "based on the alleged conduct of . . . Randleman, who was transferred [from the Okmulgee plant] after August 6, 2016." Id.

In reply to plaintiff's argument, defendant argues that plaintiff's intake questionnaire is not properly before the Court because plaintiff did not attach it to, or incorporate it by reference in, her complaint. Dkt. # 15, at 1 n.1. Moreover, defendant argues, "[e]ven if the Court finds that plaintiff's

---

[4] Defendant also argues that plaintiff's claim for retaliation (count three) is time-barred. Id. The Court, however, treats plaintiff's claim for retaliation below in Part III.ii.

[intake questionnaire] is sufficient and uses August 6, 2016, as the cutoff date, then plaintiff has still failed to allege any acts during the relevant time frame to save her claims against Randleman [i.e. counts one and two]." Id. at 4.

Under Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), a court can treat an intake questionnaire as a charge if it, along with any attachments, "can reasonably be construed to request agency action and appropriate relief on an employee's behalf . . . ." Id. at 404; see also Riley v. Tulsa County Juvenile Bureau ex rel. Tulsa County Bd. of Comm'rs, 421 Fed. App'x 781, 783-84 (10th Cir. 2010).[5] To be treated as a charge, the intake questionnaire must provide certain minimum information about the plaintiff's claims, including the name of the employer and some allegations concerning the alleged discrimination. Holowecki, 552 U.S. at 401-02. The Court has reviewed plaintiff's intake questionnaire and finds that it can be treated as a charge of discrimination under Holowecki. The questionnaire identifies the plaintiff and her employer and it includes a narrative describing the alleged discrimination. Dkt. # 13-1, at 1-5. In addition, it states that defendant allegedly engaged in sex discrimination and retaliated against plaintiff, and plaintiff asks the EEOC to investigate these claims. Id. at 2.

Given that plaintiff's intake questionnaire can be treated as a charge, if it were properly before the Court, the Court would use August 6, 2016 as the date by which to measure the timeliness of plaintiff's claims. But plaintiff's intake questionnaire is not properly before the Court. Plaintiff neither attached it to, nor incorporated it by reference in, her complaint. See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to

---

[5]  This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference.") (internal citations omitted). And even if plaintiff's questionnaire were properly before the Court, and the cutoff date for plaintiff's claims were August 6, 2016, plaintiff's claims for sexual discrimination (count one) and hostile work environment (count two) would still be time-barred because she fails to allege that Randleman (or anyone else) committed any acts of discrimination against her on or after August 6, 2016, and it is plaintiff's burden to demonstrate that she timely exhausted her administrative remedies by filing a charge with the EEOC within 300 days of the alleged discrimination. See Gad, 787 F.3d at 1041.

Accordingly, because plaintiff fails to meet her burden to demonstrate timeliness as to her claims for sexual discrimination (count one) and hostile work environment (count two), defendant's motion to dismiss is **granted** with respect to these claims, and plaintiff's claims for sexual discrimination (count one) and hostile work environment (count two) are **dismissed**.

### ii. Retaliation (Count Three)

Under Title VII, a prima facie case of retaliation requires a plaintiff to show (1) she engaged in protected opposition to an unlawful employment practice, (2) she suffered an adverse employment action, and (3) there was a causal connection between the plaintiff's protected opposition and the adverse employment action. Sokari v. Gates, 561 F.3d 1076, 1081 (2009). "A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive . . . ." O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1253 (10th Cir. 2001).

> In her complaint, plaintiff states,
>
>> [Plaintiff] exerted her rights by making complaints to Johnson about Caldwell stealing timei [sic] from [defendant] . . . . Caldwell learned of these complaints made against him by [plaintiff] . . . . As a result of these complaints and others, [plaintiff] was subjected to additional harassment by Caldwell . . . . As a result of this retaliation, [plaintiff] has lost income and benefits . . . .

Dkt. # 2-1, at 11.

Defendant argues that plaintiff fails to allege that she engaged in a protected activity or suffered an adverse employment action. Dkt. # 11-15. Plaintiff responds that "there is no evidence to suggest Caldwell was not a part of the decision-making process which led to Plaintiff's termination of employment." Dkt. # 13, at 8. Although plaintiff fails to clearly articulate her argument as to retaliation in her response to defendant's motion to dismiss, she appears to be arguing that she made a complaint against Caldwell to Johnson in December 2016, which was a protected activity, and she was terminated in January 2017, which was an adverse employment action and occurred close enough in time to plaintiff's protected activity to justify an inference of retaliation. Id.

Plaintiff fails to allege a prima facie case of retaliation. Even assuming, arguendo, that her complaint to Johnson about Caldwell was a protected activity under Title VII, plaintiff fails to allege any facts that connect her complaint against Caldwell to her termination, which was a decision Johnson and Cummings made. Plaintiff's only argument in support of her allegation that Caldwell caused her termination, and did so in retaliation for her complaint to Johnson against him, is that there is "no evidence to suggest Caldwell was not a part of the decision-making process which led to Plaintiff's termination of employment." Dkt. # 13, at 8. Alleging that there is no evidence to rebut a given claim is insufficient as a means of establishing that a given claim is plausible; it is plaintiff's

burden to plead factual allegations that raise a right to relief about the speculative level, and, with respect to her claim for retaliation (count three), she has not met her burden. Plaintiff, therefore, under Rule 12(b)(6), fails to state a claim for retaliation (count three).

Accordingly, defendant's motion to dismiss (Dkt. # 11) with respect to plaintiff's claim for retaliation (count three) is **granted**, and plaintiff's claim for retaliation (count three) is **dismissed**.[6]

### iii. Sexual Discrimination in Termination of Employment (Count Four)

To state a prima facie case of sex discrimination under Title VII, a plaintiff must allege that (1) the victim belongs to a protected class, (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, L.L.C., 287 F.3d 790, 800 (10th Cir. 2007).

In her complaint, plaintiff states, "[plaintiff] was sexually discriminated against by [defendant] when she was terminated by [defendant]. Male employees committed the same acts as [plaintiff] allegedly committed and were not terminated." Dkt. # 2-1, at 12.

Defendant argues that plaintiff fails to state a claim for sex discrimination because she (1) does not identify her comparators, (2) does not identify her comparators' supervisors, (3) does not identify when the allegedly more favorable treatment occurred, (4) does not allege that any of her comparators had jobs that entailed similar duties and responsibilities, and (5) fails to identify the company policies applicable to her comparators' misconduct. Dkt. # 11, at 18-23.

Plaintiff responds that the pleading requirements defendant recites are found in case law assessing claims for sex discrimination at the summary judgment stage, and at the dismissal stage

---

[6] Should plaintiff elect to file an amended complaint, the Court strongly suggests that her claim for retaliation (count three) could not be reasserted by counsel under Rule 11(b) of the Federal Rules of Civil Procedure based on the allegations in the complaint.

she is not required to "expressly identify the supervisors of her comparators, identify when the allegedly more favorable treatment occurred, allege that any of her comparators had jobs that entailed similar duties to her, [or] identify the company policies applicable to the comparators' misconduct . . . ." Dkt. # 13, at 11.

Even assuming, <u>arguendo</u>, that plaintiff is correct in her assertion that the allegations of sex discrimination in her complaint, to survive a motion to dismiss, need not match the level of specificity that defendant says they must, plaintiff must nevertheless support these allegations by showing at least some facts consistent with them. And plaintiff fails to do so. Plaintiff is a female and was terminated, but she does not point to a single fact in support of her allegation that "male employees committed the same acts as her and were not terminated." Dkt. # 2-1, at 11. In other words, plaintiff's claim for sex discrimination in her termination (count four) is wholly conclusory. Plaintiff, therefore, under Rule 12(b)(6), fails to state a claim for sex discrimination in her termination (count four).

Accordingly, defendant's motion to dismiss (Dkt. # 11) with respect to plaintiff's claim for sex discrimination in her termination (count four) is **granted**, and plaintiff's claim for sex discrimination in her termination (count four) is **dismissed**.[7]

**IT IS THEREFORE ORDERED,** that defendant's motion to dismiss (Dkt. #11) is **granted**, and plaintiff's complaint (Dkt. # 2-1) is **dismissed**.

---

[7] As with plaintiff's claim for retaliation (count three), <u>see</u> <u>supra</u> note 6, should plaintiff elect to file an amended complaint, the Court strongly suggests that her claim for sex discrimination in her termination (count four) could not be reasserted by counsel under Rule 11(b) of the Federal Rules of Civil Procedure based on the allegations in the complaint.

**IT IS FURTHER ORDERED**, that should plaintiff elect to file an amended complaint, she must do so in accordance with this opinion and order and no later than **December 29, 2017**.

**DATED** this 21 day of December, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE