# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SAMANTHA PAYNE, )
  )
      Plaintiff, )
  )
v. ) Case No. 17-CV-0578-CVE-JFJ
  )
GREAT PLAINS COCA-COLA BOTTLING )
COMPANY, an Oklahoma for profit business, )
  )
      Defendant. )

## OPINION AND ORDER

Now before the Court is defendant Great Plains Coca-Cola Bottling Company (GPCCBC)'s motion for summary judgment and brief in support (Dkt. # 53). On January 12, 2018, plaintiff Samantha Payne filed an amended complaint (Dkt. # 21), asserting four claims against GPCCBC only under Title VII of the Civil Rights Act of 1964. On March 13, 2018, the Court granted defendant's motion to dismiss the claims for sex discrimination based on the plant manager's conduct (count one) and retaliation (count three), but denied the motion as to the claims for hostile work environment (count two) and sex discrimination in plaintiff's termination (count four). Dkt. # 26, at 8. Thereafter, defendant moved for summary judgment on the two remaining claims (Dkt. # 53). In response, plaintiff voluntarily dismissed her claim for sex discrimination in her termination (count four). Dkt. # 61, at 6. Accordingly, plaintiff's claim for hostile work environment (count two) is the only claim remaining in this case.[1] Plaintiff alleges in count two that her GPCCBC plant

---

[1] In her response to defendant's motion for summary judgment (Dkt. # 61), plaintiff alleges for the first time a claim of quid pro quo sexual harassment based on the plant manager's conduct. Id. at 17-21. However, neither plaintiff's initial complaint nor her amended complaint asserts a claim for quo pro quo sexual harassment. See Dkt. ## 2-1, 21. Moreover, plaintiff has neither requested leave of Court nor obtained defendant's written

supervisor, Rick Randleman, subjected to her to inappropriate comments and touching that were unwelcome and were severe and pervasive enough to alter the conditions of her employment.

**I.**

In its motion for summary judgment, defendant lists twenty-six allegedly undisputed material facts for purposes of summary judgment on plaintiff's claim for hostile work environment.[2] Dkt. # 53, at 5-11, ¶¶ 1-26. In her response to defendant's motion, plaintiff disputes only one of defendant's twenty-six allegedly undisputed material facts. Dkt. # 61, at 2-8, ¶¶ 1-26. Therefore, the following material facts are undisputed for purposes of summary judgment on plaintiff's claim for hostile work environment:

Plaintiff began working for GPCCBC at its Okmulgee, Oklahoma plant in August 2012. When plaintiff started with GPCCBC she was a warehouse tech 2. In January 2015, plaintiff became an inventory control supervisor. Plaintiff reported to Brian Caldwell during the last three years of her employment with GPCCBC. Throughout plaintiff's employment with GPCCBC until August 2016, Randleman was the plant manager of the Okmulgee GPCCBC plant.

---

consent to amend her complaint for a second time. See FED. R. CIV. P. 15(a)(2). Therefore, the Court rejects plaintiff's attempt to assert a new claim through her response to the motion for summary judgment. Accordingly, the Court does not address the factual allegations and legal arguments raised in plaintiff's response to the extent they relate exclusively to a claim for quid pro quo sexual harassment.

[2]  Defendant also lists twenty-one allegedly undisputed material facts for purposes of summary judgment on plaintiff's claim for sex discrimination in her termination (count four). Dkt. # 53, at 11-14, ¶¶ 27-47. Because plaintiff has voluntarily dismissed her claim for sex discrimination in her termination, the Court does not address those twenty-one allegedly undisputed facts, as they are immaterial for purposes of summary judgment on plaintiff's claim for hostile work environment.

GPCCBC has a harassment/discrimination policy contained in the associate information handbook, which plaintiff acknowledged receiving on August 12, 2012. Dkt. ## 53, at 14, 61, at 8. The harassment/discrimination policy specifies:

> GPCC[BC] is committed to providing a work environment free of harassment. . . . In keeping with this commitment, the company maintains a strict policy prohibiting harassment in any form . . . . Harassing behaviors may include, but are not limited to: . . . derogatory comments, unwelcome jokes, teasing, sexual advances or similar verbal or physical conduct.

Dkt. ## 53, at 14, 61, at 8-9. The policy states that: "Any associate who believes they [sic] have been harassed . . . by another associate, [or] supervisor . . . should promptly report the facts of the incident(s) and the name(s) of the individual(s) involved to a member of management or the Human Resources representative in [the] area." Dkt. ## 53, at 14, 61, at 9. The policy states that: "All associates are OBLIGATED to bring issues of harassment to the attention of management immediately." Dkt. ## 53, at 14, 61, at 9. In the policy, discharge of the offending party is one potential sanction: "The Company will promptly investigate all such claims and make a recommendation . . . for appropriate corrective action up to and including discharge of the offending party." Dkt. ## 53, at 15, 61, at 9.

Also contained in the associate information handbook is the policy entitled "Equal Employment Opportunity, Harassment, Sexual Harassment and Retaliation Policy," which states that: "The Coca-Cola Company prohibits sexual harassment." Dkt. ## 53, at 15, 61, at 9. In that policy, sexual harassment is defined to include: "unwelcome conduct directed towards an employee because of his/her gender, which has the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment." Dkt. ## 53, at 15, 61, at 9. That policy gives examples of conduct that can be found to be harassment: "unwelcome flirtations, advances, or requests for sexual favors; . . . sexually suggestive

3

comments or jokes; . . . comments regarding sexual behavior or the body of another employee; . . . obscene letters, emails, notes, invitations, photographs, cartoons, articles, or other written or pictorial materials of a sexual nature; . . . [and] continuing to express sexual or romantic interest after being informed that interest is unwelcome." Dkt. ## 53, at 15, 61, at 9-10. That policy provides that: "[a]ny employee who is found to have sexually harassed another individual will be subject to disciplinary action, up to and including termination." Dkt. ## 53, at 15, 61, at 10. That policy requires employees to report conduct that would or could be harassment: "All employees are required to immediately report incidents of prohibited conduct of which they become aware." Dkt. ## 53, at 16, 61, at 10.

Plaintiff acknowledged receiving "sexual harassment training" and that she understood the content, requirements, and expectations of the GPCCBC harassment and discrimination policies. Dkt. ## 53, at 16, 61, at 10. In addition to the policies, plaintiff was part of annual training that GPCCBC provided to its employees on sexual harassment and what to do if there was harassing or unwelcome conduct in the workplace. Dkt. ## 53, at 16, 61, at 10-11. In these training sessions, plaintiff was given a handout containing the definition of and types of conduct that can be sexual harassment, consistent with the policies in the associate information handbook. Dkt. ## 53, at 16, 61, at 11. Each year during her employment at GPCCBC, plaintiff affirmatively represented to GPCCBC that: (1) she had completed the yearly sensitivity and diversity training, and (2) she had "not been subjected to, witnessed, or been made aware of any incident(s) or act(s) which have not been reported or addressed through the GPCC[BC] complaint resolution procedure that . . . were in violation of . . . policies that prohibit sexual harassment, harassment, or unlawful discrimination." Dkt. ## 53, at 16-17, 61, at 11.

Plaintiff knew how to use GPCCBC's harassment policies because she did so when she reported another employee, Bobby Sadler, in late 2013 for making passes at her and trying to date her. Dkt. ## 53, at 17, 61, at 11. Plaintiff did not report to anyone at GPCCBC that she considered Randleman's conduct with her to be offensive or unwelcome. Dkt. ## 53, at 17, 61, at 12. Plaintiff knew she was supposed to report any such conduct if it was unwelcome to her. Dkt. ## 53, at 17, 61, at 12. After Randleman transferred to Oklahoma City, he called plaintiff a couple of times but plaintiff did not report those calls to Heather Johnson, the new Okmulgee plant manager. Dkt. ## 53, at 17, 61, at 12.

On January 19, 2017, plaintiff was terminated by GPCCBC. Dkt. # 61, at 21. Plaintiff contacted Steve Shields, the group director for labor, employment practices, and employee relations at The Coca-Cola Company, listing her complaints about her termination in a five-page email. Dkt. ## 53, at 18, 61, at 12. Nowhere in that email, which discusses alleged discrimination and sexual harassment, does plaintiff mention anything about Randleman subjecting her to a hostile work environment. Dkt. ## 53, at 18, 61, at 12. In another post-termination email to Shields, and in her National Labor Relations Board confidential witness affidavit, plaintiff does not mention any alleged harassment by Randleman. Dkt. ## 53, at 18, 61, at 12-13. Plaintiff contacted Millie Bennett with corporate human resources in Atlanta asking her to investigate her termination, but when Bennett asked plaintiff about Randleman and any relationship between the two, plaintiff completely denied it. Dkt. ## 63, at 7-8, 70, at 6.

Plaintiff admits to sending all of the text messages that appear to be sent from her phone to Randleman, and that no one told her what to send. Dkt. ## 53, at 13, 61, at 8.[3] No text messages were exchanged between plaintiff and Randleman after Randleman transferred to Oklahoma City in August 2016. Dkt. ## 53, at 14, 61, at 8.

In her response to the motion, plaintiff disputes defendant's statement that the sexual harassment policy provides that reporting of sexual harassment can be made to the employee's immediate supervisor or manager or human resources, or to a national phone line if the employee feels that his or her concerns are not being investigated promptly or reasonably. Dkt. ## 53, at 16, 61, at 10. In disputing this statement, plaintiff argues that the "policy only directs employees to their immediate supervisor, manager or Human Resources. The national Ethics phone line goes directly to Nancy Cummings [the local Human Resources Manager] . . . . Every Human Resources problem

---

[3] Although not explicitly stated in any undisputed fact, the crux of plaintiff's claim is more than 5,000 text messages received from Randleman over the course of almost two years. Dkt. # 21, at 3, ¶ 17. Defendant requested plaintiff to produce those text messages in discovery. Dkt. # 53, at 11. The forensic company hired by the parties was not able to recover the actual text messages between plaintiff and Randleman, because they had been deleted from plaintiff's three cell phones; however, it did recover 13,688 screenshots of text messages exchanged between plaintiff and Randleman that plaintiff had saved to an app on her iPhone entitled Private Photo Vault. Id. According to Kelly Hardinger, plaintiff's former co-worker at GPCCBC, plaintiff had told her that she was saving the screenshots of their text message conversations in case anything ever happened to her employment so she could use them against Randleman. Id. at 11-12; Dkt. # 53-3. Defendant asserts that the forensic analysis shows that plaintiff sent sexually-suggestive text messages and images to Randleman at least on a weekly basis from July 2014 through April 2016. Defendant alleges that the vast majority of these screenshots of text messages sent from plaintiff to Randleman are vulgar, obscene, and graphic, and it quotes several examples of text messages sent by plaintiff. Dkt. # 53, at 12. Plaintiff does not dispute sending those text messages; rather, she argues that defendant intentionally quoted those text messages "for the explicit purpose of shocking and dismaying this Court." Dkt. # 61, at 8.

went to Nancy Cummings." Dkt. # 61, at 10. It is undisputed, however, that the associate information handbook states the following:

> In the event an employee becomes aware of prohibited conduct in the workplace, the employee is required to immediately take the following actions: 1. Notify the employee's immediate supervisor or manager of the situation; or 2. Notify the following Company representatives: . . . Great Plains employees contact Human Resources by calling: East Area HR: 1- 918-519-8131, or West Area HR: 1-405-280-2716 . . . . If an employee has reason to believe that appropriate action is not being taken by such individuals within a reasonable period of time, the employee should contact 877-676-7656 to report his or her concern. If an employee needs to report the prohibited conduct of his or her supervisor or manager, the employee must report such conduct to one of [the] reporting channels listed above. Such an employee is not required to report such conduct to the individual(s) responsible for the conduct. Upon receipt of a report of prohibited conduct, the Company will take prompt action including conducting a thorough investigation. The Company will take reasonable measures to respect the confidentiality and privacy of all individuals involved in the investigation. However, the company cannot guarantee complete confidentiality. The investigative process may require the Company to contact the individual(s) who may have engaged in prohibited conduct as well as witnesses to such conduct.
>
> . . .
>
> You can seek guidance from, or raise concerns to: . . . The Ethics & Compliance Office[:] Phone: +1-404-676-5579
>
> . . .
>
> You also can ask a question about the Code, or raise a concern, through **EthicsLine**: . . . . By phone, toll-free at +1-866-790-5579.

Dkt. # 53-7, at 29-31 (emphasis in original).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

An employer may be vicariously or directly liable for a hostile workplace. Faragher v. City of Boca Raton, 524 U.S. 775, 806-07 (1998). The applicable theory of liability for such harassment depends on the status of the harasser. Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). Generally, an employer is directly liable when the harasser is a co-worker of the plaintiff and the employer was negligent with respect to the offensive behavior. Id. at 427. However, "different rules

8

apply where the harassing employee is the plaintiff's 'supervisor.' In those instances, an employer may be <u>vicariously</u> liable for its employees' creation of a hostile work environment." <u>Id.</u> at 428 (emphasis in original). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." <u>Id.</u> at 424. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998). Although plaintiff's amended complaint does not state the theory of liability on which she relies, it is undisputed that Randleman, as GPCCBC's Okmulgee plant manager, "had the power to hire and fire Plaintiff, and otherwise affect the terms and conditions of her employment." Dkt. ## 21, at 2, ¶ 15; 27, at 2, ¶ 15. Therefore, Randleman was plaintiff's "supervisor" at the time of the alleged harassment. Accordingly, the appropriate theory of GPCCBC's liability, if any, is vicarious liability.

In <u>Ellerth</u> and <u>Faragher</u>, the U.S. Supreme Court identified two situations in which an employer may be vicariously liable for a hostile work environment. First, an employer is vicariously liable "when a supervisor takes a tangible employment action." <u>Ellerth</u>, 524 U.S. at 762; <u>Faragher</u>, 524 U.S. at 790. In those circumstances, it is appropriate to hold the employer strictly liable. <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher</u>, 524 U.S. at 807. Second, even when a supervisor's harassment does not culminate in a tangible employment action, the employer can be vicariously liable for the supervisor's creation of a hostile work environment if the employer is unable to establish an affirmative defense ("the <u>Faragher-Ellerth</u> defense"). <u>Ellerth</u>, 524 U.S. at 763-65; <u>Faragher</u>, 524 U.S. at 803-07. To establish the <u>Faragher-Ellerth</u> defense, the defendant bears the burden to show:

9

(1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 653 (10th Cir. 2013). Plaintiff does not allege, and the record does not suggest, that Randleman's alleged harassment culminated in any tangible employment action to plaintiff.[4] Accordingly, the Court turns to whether defendant is entitled to summary judgment based on the Faragher-Ellerth defense.

### A. First Element

The first element of the Faragher-Ellerth defense requires an employer to exercise reasonable care: (a) to prevent harassment and (b) to correct promptly any harassment that does occur. Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1062 (10th Cir. 2009).

#### 1. Prevention

An employer acts reasonably as a matter of law to prevent harassment if it has "adopted valid sexual harassment policies [and] distributed those policies to employees via employee handbooks." Helm v. Kansas, 656 F.3d 1277, 1288-90 (10th Cir. 2011). It is undisputed that GPCCBC has implemented and distributed a harassment/discrimination policy and a sexual harassment policy through its associate information handbook, and that plaintiff received this handbook. It is also undisputed that these policies prohibit sexual harassment, obligate employees to report harassing conduct, contain complaint procedures listing multiple telephone numbers through which harassment may be reported, and sanction discharge as a disciplinary action for the offending party. Further,

---

[4]     The Court notes that, although plaintiff was terminated, she does not allege and the record does not suggest that Randleman's alleged harassment culminated in her termination.

10

there is no dispute that defendant provides annual sexual harassment training to its employees, and that plaintiff attended the annual training and received a handout containing information on sexual harassment.

Nonetheless, plaintiff suggests that defendant failed to act reasonably to prevent harassment because its policies are defective or dysfunctional. As support, plaintiff cites to a Sixth Circuit case affirming denial of summary judgment because the policy did not "expressly instruct the employees on any particular mechanism to bypass a harassing supervisor when making a complaint of harassment." Dkt. # 61, at 30 (quoting Shields v. Fed. Exp. Customer Info. Servs., Inc., No. 10-4494, 2012 WL 3899033 (6th Cir. 2012)). However, there is no dispute in this case that GPCCBC's associate information handbook expressly provides that an employee who needs to report the conduct of a supervisor or manager "is not required to report such conduct to the individual(s) responsible for the conduct;" in fact, it lists at least two channels to report harassment that would allow plaintiff to bypass Randleman.

Plaintiff also argues that the policies are defective or dysfunctional because she personally believed any and all complaints would have come back to Randleman. There is no dispute that the sexual harassment policy states that "[t]he investigative process may require the Company to contact the individual(s) who may have engaged in prohibited conduct." Understandably, most complainants would prefer for their alleged harasser not to be informed that the complainant reported his or her conduct; however, the fact that the employer might need to contact the alleged

harasser to adequately investigate the allegations of sexual harassment against him or her does not, as a matter of law, make the policy defective or dysfunctional.[5]

Accordingly, defendant has shown that there is no genuine dispute of material fact that it has adopted and distributed valid sexual harassment policies, and "[t]he prevention component of the Faragher defense does not require more." Debord, 737 F.3d at 654. Thus, the Court finds, as a matter of law, that defendant exercised reasonable care to prevent sexual harassment.

### 2. Correction

The Court next asks whether the employer acted reasonably to correct any harassment that occurred, despite the reasonable preventative measures. As the Tenth Circuit has explained, adequate notice of the sexually harassing conduct is a necessary precursor to trigger an employer's duty to take corrective action. Helm, 656 F.3d at 1290; see Debord, 737 F.3d at 654 (an employer has acted reasonably to correct sexual harassment if it has responded in a prompt manner "when it was given proper notice" of the alleged harassment). "The law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." Pinkerton, 563 F.3d at 1063. Hence, if the employee fails to give adequate notice to the employer of the alleged harassment, the employer cannot be deemed unreasonable for failing to take corrective action. Helm, 656 F.3d at 1290-91. Here, it is undisputed that plaintiff did not provide any notice whatsoever to GPCCBC about Randleman's allegedly harassing behavior. To the contrary, plaintiff affirmatively represented to

---

[5]   In fact, any employer whose sexual harassment policy broadly states that it will not contact the person alleged of sexual harassment in conducting its investigation would likely be subject to a strong argument that it has failed to act reasonably to "ferret out and put a stop to any discriminatory activity in their operations." Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 278 (2009).

GPCCBC, on an annual basis, that: (1) she had completed the yearly sensitivity diversity training, and (2) she had not been subjected to, witnessed, or been made aware of any incidents or acts which have not been reported or addressed through the GPCCBC complaint resolution procedure that were in violation of the policies. Therefore, defendant's duty to take corrective action was never triggered. No reasonable jury could find that defendant acted unreasonably in not taking corrective action where defendant did not have a duty to act.[6]

Accordingly, the first element of the Faragher-Ellerth defense is satisfied.

B. Second Element

Having determined that defendant acted reasonably to prevent and correct any sexually harassing behavior, the Court now turns to whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. A showing that plaintiff "unreasonabl[y] fail[ed] to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden under the second element of the defense." Faragher, 524

---

[6] In her response, plaintiff asserts that when she reported Sadler's sexual harassment years earlier, GPCCBC ultimately promoted him as her direct supervisor; therefore, plaintiff argues, defendant has not proven that its attempts at corrective action were "'reasonably calculated to end the harassment' and deter future harassers." Dkt. # 61, at 31-32. Such an argument, however, is irrelevant to the Court's analysis. The Faragher-Ellerth defense, like Title VII law generally, focuses on defendant's response to the alleged harassment at issue. See Helm, 656 F.3d at 1290 ("[I]n order to establish that it took proper action to correct harassment, [the defendant is] required to show that it acted reasonably promptly on [the plaintiff's] complaint when it was given proper notice of her allegations as required under its complaint procedures."). A defendant's past failure to promptly correct an unrelated instance of harassment does not forever bar the defendant from shielding itself from liability with the Faragher-Ellerth defense. If it did, the preventative purpose of the Faragher-Ellerth defense would be severely undercut. Therefore, whether defendant acted reasonably to correct any harassment by Sadler upon proper notice of such conduct is irrelevant to the Court's determination of whether defendant acted reasonably to correct Randleman's alleged harassment.

U.S. at 807-08. The Tenth Circuit has held that the failure to use the employer's complaint procedure is unreasonable where the employee "had received the harassment training and knew that the incidents should have been reported." Pinkerton, 563 F.3d at 1063-64; see Debord, 747 F.3d at 654. As discussed, there is no dispute that plaintiff failed to use GPCCBC's complaint procedure–or any procedure whatsoever–to report Randleman's alleged harassment. Further, it is undisputed that plaintiff understood the content, requirements, and expectations of the harassment policies, and that she attended sexual harassment training. In fact, the parties agree that plaintiff knew how to use GPCCBC's procedure for reporting harassment, because she had used it to report Sadler for sexual harassment a few years earlier. Based on these undisputed facts, defendant has shown that plaintiff's failure to take advantage of GPCCBC's complaint procedure was unreasonable.

In her response, plaintiff argues that "[i]f an employee's fear of retaliation is genuine and reasonable, that may in some cases make it permissible for a plaintiff to delay in reporting." Dkt. # 61, at 31. While the Court agrees with this statement as a matter of law, the Court does not find it applicable in this case because plaintiff has not alleged "concrete reason[s] to apprehend that complaint would be useless or result in affirmative harm to the complainant." Kramer v. Wasatch Cty. Sheriff's Office, 743 F.3d 726, 751 (10th Cir. 2014). In Kramer, the Tenth Circuit held that the plaintiff had alleged concrete reasons to fear retaliation for reporting her harasser, because her harasser repeatedly told her to "be quiet," to "not say anything" or it would be "a career ender," and threatened her with a poor evaluation unless she would "keep [her] mouth shut and not say anything." Id. Here, plaintiff has not made any allegation that Randleman or anyone else threatened to retaliate against her if she were to report Randleman's alleged harassment. The only basis plaintiff provides for her alleged fear of retaliation is that after she reported Sadler for sexual

14

harassment a few years earlier, GPCCBC ultimately promoted him as plaintiff's supervisor. However, while plaintiff was likely displeased with the outcome of that investigation and uncomfortable with Sadler's promotion, plaintiff has not alleged any facts to suggest that Sadler was promoted as retaliation for plaintiff filing a complaint against him, or that the promotion was in any way related to plaintiff's complaint. Therefore, the record does not reveal any reason for plaintiff's failure to report Randleman other than a generalized fear of retaliation. "It is undeniable that raising problems regarding sexual harassment can be uncomfortable for the employee, but if we were to allow an employee's subjective, ungrounded fears of unpleasantness or retaliation to alleviate an employee's reporting requirement, we would 'completely undermine Title VII's basic policy of encouraging forethought by employers and saving action by objecting employees.'" Pinkerton, 563 F.3d at 1063 (10th Cir. 2009). Therefore, plaintiff failed to raise a material issue of fact as to whether her failure to use GPCCBC's complaint procedure to report Randleman was reasonable.[7]

Based on the undisputed material facts, GPCCBC has shown that it acted reasonably to prevent and correct any sexual harassment and that plaintiff unreasonably failed to take advantage of defendant's preventive or corrective opportunities. Accordingly, defendant is entitled to

---

[7] Plaintiff also argues that where the employer has designated only one person as the individual to receive and investigate complaints, and it is the very person who has allegedly harassed the plaintiff, reasonableness becomes a question for the jury. The Court considers this argument odd in light of the fact that plaintiff has not alleged, and there is no evidence in the record to suggest, that the only person designated by GPCCBC to receive and investigate complaints was Randleman. Rather, the undisputed facts show that the policies provide several channels other than Randleman to whom an employee may report harassment. Further, plaintiff's allegation that Randleman might eventually learn of her complaint does not suggest that Randleman was the only individual designated by GPCCBC to receive and investigate complaints.

judgment as a matter of law on <u>Faragher-Ellerth</u> defense, and defendant's motion for summary judgment should be granted as to plaintiff's claim for hostile work environment (count two).

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 53) is **granted**. A separate judgment is entered herewith.

**DATED** this 16th day of October, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE